Herbert ROOM, Plaintiff, Appellant,

v.

CARIBE HILTON HOTEL, Defendant, Appellee.

No. 80–1607.

United States Court of Appeals, First Circuit.

Argued June 1, 1981.

Decided Sept. 14, 1981.

---

Jose E. Fernandez Sein, Rio Piedras, P. R., with whom Harvey B. Nachman, Santucce, P. R., was on brief, for plaintiff, appellant.

Charles DeMier Leblanc, Hato Rey, P. R., with whom A. Miranda Cardenas, De Corral & Rodriguez, Old San Juan, P. R., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff Herbert Room commenced this diversity action to recover damages allegedly arising out of a heart attack he suffered on November 24, 1976, while a guest at defendant Caribe Hilton Hotel. At the close of plaintiff's case-in-chief, the district court granted a directed verdict for defendant and plaintiff appeals. We affirm.

The facts as viewed in the light most favorable to plaintiff, *see, e. g., Carlson v. American Safety Equipment Corp.*, 528 F.2d 384, 385 (1st Cir. 1976), are as follows. Herbert Room arrived in Puerto Rico on November 24, 1976 and registered as a guest at the Caribe Hilton Hotel in San Juan. That evening, Room gambled at the hotel casino. As he was leaving the casino, he began to feel weak and returned to his room. Upon arriving there, he felt nauseous, and therefore called the hotel operator, after reading the following section in the hotel service directory:

> A registered nurse is on duty, and a qualified physician is available at all times. Call doctor's office for appointment 8:30 A.M. to 5:00 P.M., Monday through Friday. After hours and Saturdays and Sundays, call: Telephone operator. Nurse will be glad to make dental appointments. Call: Ext. 1740.

This first call to the operator took place, according to Room, at 7:30 p. m. He requested a doctor, although he did not describe his symptoms, and testified that the operator told him she would get him one. At 11:30 p. m., he called the operator and again requested a doctor, again making no mention of his symptoms. The operator tried to call one of three doctors listed on a hotel roster as available to treat guests, but his line was busy. She then called Room, who told her to keep trying. Five or ten minutes later she tried again to call the doctor, but his line was still busy. She informed Room, who again asked her to keep trying. She tried to call the other doctors on the list, but was unable to make contact with any of them. Once again, she called Room, who again asked her to keep trying. At no time did she call the 24-hour emergency number of the San Jorge Hospital, although that number was also listed on her roster. Eventually, Room called some friends in Puerto Rico, who advised him to take a cab to the Presbyterian Hospital,

which he did. They also called the hotel operator and informed her that she could stop trying to call the doctor.

Room arrived at the hospital at approximately 1:15 a. m. His condition was diagnosed as a myocardial infarction, or heart attack. He remained hospitalized for almost a month. In the course of that time, he suffered two more serious incidents involving his heart, acute cardiac failure on November 30, and paroxysmal tachycardia on December 8.

After being released from the hospital, Room returned to his home in New York and took a job as a converter in the textile industry. He quit approximately nine months later because he was unable to keep enough information in his head to do his job satisfactorily. He now suffers from a poor memory and head pains, complaints he never had before his heart attack.

Room sued the hotel, alleging that it had breached a duty under Puerto Rico law to provide him with adequate medical care by failing to put him in touch with a doctor from the time he first called the operator until he left for the hospital. Room alleged that this delay caused him permanent brain damage, and claimed $1 million in damages for hospital and medical expenses, loss of earnings, and pain and suffering. In directing a verdict for the defendant, the district court found, *inter alia*, that the delay in providing plaintiff with medical attention was not a proximate cause of his injuries.[1]

Assuming *arguendo* that the defendant breached a duty to exercise reasonable care in providing medical care to its guests,[2] the plaintiff must still establish a causal relation between the defendant's negligence and the plaintiff's injury. *See, e. g., Portilla v. Carreras Schira*, 95 P.R.R. 785, 793 (1968). In discussing this issue, it is necessary to distinguish the plaintiff's permanent brain damage from any pain and mental anguish he may have suffered during the

time when the defendant failed to provide him with a doctor. We shall address the permanent injuries first.

The plaintiff's sole expert testimony concerning his medical condition was given by Dr. Jose Luis Freyre, a clinical neurologist. Dr. Freyre examined the plaintiff on November 1, 1978. He had no contact with plaintiff at any time prior to this; specifically, he did not treat plaintiff during his hospitalization in 1976.

Dr. Freyre testified as to plaintiff's loss of some cerebral function, and testified further that the heart attack of November 24 could have caused this condition. On cross-examination, however, he admitted that the hospital's records of plaintiff's condition at the time of his admission were not complete enough to determine with any degree of certainty whether the November 24 attack did indeed cause any brain damage. In particular, the lack of any information as to plaintiff's blood pressure at the time of admission made it impossible for Dr. Freyre to ascertain whether the attack had resulted in any significant decrease in blood flow to the brain.

Most significantly, Dr. Freyre was unable to determine which of the three heart-related incidents suffered by plaintiff caused the brain damage. The following colloquy took place between the court and Dr. Freyre:

THE COURT: [C]ould the second [heart failure] have been the cause of [plaintiff's] condition?

THE WITNESS: It could have.

THE COURT: Is there any way of telling whether it was the second or the first?

THE WITNESS: No way of telling whether it was the first, second or third.

It is not disputed that the delay in rendering medical assistance on November 24 was not a cause of the two subsequent cardiac incidents. There was no evidence that the delay on November 24 was a more

---

1. In light of our decision on this issue, it is not necessary to reach the other grounds on which the district court rested its decision.

2. We do not decide whether such a duty actually existed or whether it was breached in this case.

likely cause of plaintiff's condition than were the other two incidents. In such a situation, any determination by the jury that the delay did cause the injury would be pure speculation and conjecture. Such speculation is not permitted. *Widow of Delgado v. Boston Insurance Co.*, 99 P.R.R. 693, 702–04 (1971); W. Prosser, Handbook of the Law of Torts § 41, at 241 (4th ed. 1971). The directed verdict for defendant as to plaintiff's permanent brain damage was therefore proper.

The evidence of any mental anguish [3] that plaintiff may have suffered during the delay in obtaining medical treatment was also insufficient to overcome defendant's motion for a directed verdict. Plaintiff's sole evidence on this issue is as follows. He testified that during the time he was in the hotel room waiting for the operator to contact a doctor, he was weak and had few lucid moments. He said he had some pains in his back and arms, and that at one point they became very severe, at which time he felt that he was going to die.

There was, however, no evidence that the delay alone caused any pain or mental suffering. Defendant quite rightly points out that the heart attack itself—an event for which defendant was not responsible—would be accompanied by some pain, regardless of the speed with which help arrived. There was no attempt by plaintiff to show the extent to which prompt medical attention would have alleviated his pain, if at all. Given this failure even to attempt to apportion the damages between the delay and the heart attack,[4] no reasonable jury could conclude that the delay alone caused any pain or mental suffering.

Similarly, the proof of mental anguish based on plaintiff's fear that he was going to die was insufficient. Again, there is no evidence that he would not have feared for his life even after receiving medical attention. The fact that he suffered two more cardiac-related crises while in the hospital certainly suggests that he was not out of danger even after his hospitalization. Moreover, plaintiff did not describe how long he feared for his life or how great that fear was. Any attempt by the jury to assign a dollar value to this injury based on the testimony described above could only be the result of speculation and conjecture. While plaintiff's testimony may amount to a scintilla of evidence that the delay caused him substantial mental anguish, that is not sufficient to overcome a motion for a directed verdict. *See, e. g., Trinidad v. Pan American World Airways, Inc.*, 575 F.2d 983, 985 (1st Cir. 1978).

*Affirmed.*

---

3. Under Puerto Rico law, a plaintiff may recover damages for mental suffering, even without any physical injury being alleged or proven. *See Compagnia Nationale Air France v. Castano*, 358 F.2d 203 (1st Cir. 1966); *Muriel v. Suazo*, 72 P.R.R. 348 (1951); *Rivera v. Rossi*, 64 P.R.R. 683 (1945).

4. Defendant is not, of course, responsible for that portion of the injury resulting solely from the heart attack. *See generally* W. Prosser, Handbook of the Law of Torts § 52, at 317–20.