Arsenio BAEZ, et al., Plaintiffs,

v.

AMERICAN CYANAMID COMPANY CARIBBEAN BRANCH, Defendant.

Civ. No. 86–1199(PG).

United States District Court,
D. Puerto Rico.

April 22, 1988.

Jose L. Rivero Vergne, San Juan, P.R., for plaintiffs.

Jose E. Gonzalez Borgos, San Juan, P.R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

Arsenio Báez ("plaintiff") claims defendant-employer, American Cyanamid Co.—Caribbean Branch ("American Cyanamid"), fired him because of his age. Plaintiff, his wife and the conjugal partnership they form bring causes of action based on the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and Puerto Rico's Law 100, P.R.Laws Anno., tit. 29, § 146. We have jurisdiction over the ADEA action, and plaintiff asks us to exercise pendent jurisdiction over the local claim. Before us is defendant's motion for summary judgment. Findings of facts are necessary to determine the fate of plaintiff's claims.

Plaintiff started working with American Cyanamid as a sales representative in April 1974. At all times relevant to this suit he was assigned to promote and to sell American Cyanamid products in "Territory 9", which comprised 13 towns on the northwestern part of Puerto Rico. In February 1985, Edwin Torregrosa was assigned to look over plaintiff's sales performance as his new immediate supervisor.

Torregrosa accompanied plaintiff in his sales efforts seven times during the February-to-June 1985 period to evaluate plaintiff's sales approach.[1] On July 11, 1985, after another one of those field trips, plaintiff met with Torregrosa for more than three hours to discuss plaintiff's 1985 sales and salesmanship as of June 30.[2] Torregrosa thought plaintiff could improve his sales to the public health centers. He believed plaintiff was not taking the necessary promotional steps with the centers. He also suggested to plaintiff alternatives to improve sales. Plaintiff's reaction to Torregrosa's constructive criticism and demands was not positive.

On July 18, 1985, Torregrosa received a memorandum from Mr. La Luz, Medical Department Manager.[3] Plaintiff's sales for the January–June 1985 period were

---

1. Defendant's Statement of Uncontroverted Facts ("Defendant's Statement"), par. 4(c).

2. Defendant's Statement, par. 4(e).

3. Exhibit A, Defendant's Statement.

11.6% below those of the same 1984 period. The sales were also substantially below his quota.

On July 19, 1985, Torregrosa met with plaintiff to discuss Mr. La Luz's memorandum. Torregrosa even wrote a memorandum to plaintiff as to how he could improve sales.[4] Plaintiff's reaction to the suggestions was not positive.

On August 13, 1985, Torregrosa sent a memorandum to plaintiff asking why he averaged 6.2 doctors a day during July 1985 when company policy required at least eight doctor visits a day.[5] Plaintiff excused his performance by saying that July 5 was a bad day to contact doctors and that July 19th and 23rd were rainy days.[6] Torregrosa was not satisfied with plaintiff's explanation. This was not the first time he was told to improve performance in the private practitioners' area.[7]

Torregrosa accompanied plaintiff in his sales visits on August 28 and September 26 and 27. As to the latter, Torregrosa filled out an evaluation sheet.[8] Plaintiff's work was rated either "good" or "average" in most aspects. This contrasted with previous field evaluations in March and June, on which plaintiff's work was mostly deemed as "good".[9] In particular, it is worth noting the deterioration in Torregrosa's evaluation of plaintiff's "professional selling techniques", which had been the subject of discussion in the aforementioned July meetings.

In October 18, 1985, plaintiff met with Héctor Méndez, American Cyanamid's personnel manager, and Torregrosa.[10] Plaintiff was handed a memorandum written by Torregrosa that discussed his 1985 sales as of September 30. These were 22.3% under his quota and 15.4% below the same 1984 period. Figures also showed that even if 1984 vaccine sales were not considered in the 1984–85 comparison,[11] plaintiff's sales were still 8.1% below the 1984 level. Plaintiff was told to make up for the amount undersold (as compared to 1984) during the July–September 1985 period and to comply with his October and November quotas. Otherwise, he would be terminated.[12]

During that meeting plaintiff did not mention anything about being discriminated by Torregrosa because of his age. At one point during the meeting, Torregrosa left to give plaintiff a chance to air out any complaints against his immediate supervisor. Plaintiff said nothing about age discrimination. He excused his lackluster sales performance based on reasons that were not deemed convincing by his supervisors.[13]

On December 6, 1985, Méndez, Torregrosa, plaintiff and Francisco Brigantty, American Cyanamid Sales Manager, met. Plaintiff had not made the sales required of him on the October meeting—he was 23.6% below that amount. Moreover, Torregrosa noted plaintiff's salesmanship and attitude problems continued. Consequently, Torregrosa asked plaintiff for his resignation. Plaintiff did not tender it and instead promised to cover his sales deficit as of November 30, 1985 (compared with 1984 sales) and to meet his December 1985 quota. Plaintiff was given a last opportunity.[14]

On January 2, 1986, Brigantty and Méndez asked Torregrosa to see whether plaintiff had complied with his promises. Plaintiff had not. According to Torregrosa's manual calculations, plaintiff was 0.4% be-

---

4. Exhibit B, Defendant's Statement.

5. Exhibit C, Defendant's Statement.

6. *Id.*

7. Exhibit 27, Plaintiffs' Opposition to Summary Judgment ("Plaintiffs' Opposition").

8. Exhibit 31, Plaintiffs' Opposition.

9. Exhibits 28 and 29, Plaintiffs' Opposition.

10. Exhibit III, par. 21, Defendant's Statement.

11. Vaccines sales during 1984 were unusually high because of government purchases.

12. Exhibit III, par. 21, Defendant's Statement.

13. Exhibit I, par. 8, and Exhibit III, par. 22, Defendant's Statement.

14. The discussions during the December 6 meeting were the subject of a December 9 memorandum by Torregrosa. Plaintiff received it on December 12. See Exhibit E, Defendant's Statement.

low his 1984 sales,[15] not including a credit for a return of an order that would put plaintiff's sales 1.1% below 1984 sales.

Brigantty and Méndez met with Torregrosa. They all decided to fire plaintiff because his 1985 sales were below his quota and, more importantly, under his 1984 sales. In the termination letter,[16] Torregrosa also mentions the two probation periods after which plaintiff failed to make good his sales promises as well as the various oral and written admonitions. Plaintiff was 46 years old when fired.

We must note that during the approximately ten months Torregrosa supervised plaintiff, relations between them were not good. In his deposition, plaintiff said Torregrosa was "always pressuring [him] in an arbitrary manner"[17] and "to the point of exasperation."[18] Plaintiff characterized his working relationship with Torregrosa as one within a "negative atmosphere."[19] In his motions plaintiff also makes constant reference to the absence of criticism from his supervisors prior to Torregrosa, implying that Torregrosa was picking on him.[20]

On January 7, 1986, a preliminary sales report for 1985 showed plaintiff's sales were up 1.4% from those of 1984.[21] Since the report was issued five days after plaintiff's discharge, it was not taken into consideration in the making of that decision. The final 1985 sales report issued on June 2, 1986, confirmed Torregrosa's manual computations prior to firing plaintiff—his sales were 1.1% under the 1984 sales and 19.6% under his 1985 quota.[22] This computation took into account plaintiff's 1986 credit notes, *i.e.*, 1986 returns of products sold by plaintiff in 1985.[23]

After plaintiff's dismissal, his and nine other territories were reorganized.[24] The sales representatives that serve plaintiff's old territory under its reorganization were 28 and 32 years old when they took over.[25] The sales in the towns that used to be plaintiff's territory increased from $229,276 when plaintiff worked it in 1985 to $273,341 in 1986, a 19.2% increase.[26]

Plaintiff was not the only sales representative failing to match his previous year sales. Five other salespersons did not.[27] Only one, who was 48 years old, was also discharged. American Cyanamid explained why the other four were not fired.[28] "Territory 1" representative's 1985 sales were below those of 1984 because the territory was without a salesperson for 1½ months. "Territory 3" was affected by the loss of a major client who decided to stop purchasing merchandise from the salesperson in charge and instead started to buy directly from its parent company. "Territory 12" 1985 sales were .2% below 1984 sales because its sales representative, Gilberto Irizarry, suffered an aggravation of a heart condition. Irizarry was sixty years old when plaintiff was fired and had worked with American Cyanamid for 40 years. "Territory 20", which used to be Torregrosa's territory before being made plaintiff's supervisor, was vacant for 1½ months and, thus, its 1985 sales were below those of 1984.

■ Turning now to the applicable law, a very recent decision of the Court of Appeals for the First Circuit, *Dea v. Look*, 810 F.2d 12 (1st Cir.1987), explains the procedure we must follow in determining wheth-

---

15. Exhibit III, par. 25, Defendant's Statement.

16. Exhibit G, Defendant's Statement.

17. Exhibit F, Plaintiffs' Surreply.

18. Defendant's Opposition, p. 9.

19. Plaintiffs' Opposition, p. 14.

20. Exhibits 27 and C, pp. 2 and 6, Plaintiffs' Opposition.

21. Exhibit H, Defendant's Summary Judgment Motion.

22. Exhibit I, Defendant's Summary Judgment Motion.

23. Exhibit H, Plaintiffs' Opposition.

24. Exhibit III, par. 27, Defendant's Statement.

25. Plaintiff's Opposition, p. 18.

26. Exhibit III, par. 28, Defendant's Statement.

27. Plaintiffs' Opposition, p. 4.

28. Exhibit II, par. 8, Defendant's Statement.

er summary judgment should be granted as to an ADEA action. We must first find whether plaintiff has made a *prima facie* case. To that effect plaintiff typically will prove that 1) he is within the protected age group, that is, 40 to 65 years; 2) he was discharged; 3) he was replaced by a younger person outside the protected age group; and 4) he was qualified to do the job. *Dea,* 810 F.2d at 14, n. 1, *following, Loeb v. Textron, Inc.,* 600 F.2d 1003, 1008 (1st Cir. 1979). Or, plaintiff may also meet his burden by presenting direct evidence that he was discharged because of age. *Id.,* at 1014, n. 12. Either way, plaintiff has the burden of proving a *prima facie* case of discrimination by a preponderance of evidence. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

■ If plaintiff makes his *prima facie* case, the burden of production then shifts to the employer. He must articulate a plausible, non-discriminatory reason for the dismissal. *Dea,* 810 F.2d at 15. Whether defendant has made an acceptable rebuttal is for the court, not a jury, to decide. *Id.* at 16. If a sufficient explanation is given, "[p]laintiff continues to carry the burden of showing discriminatory intent, and the relevant question is whether the given reason was a pretext for discrimination." *Id.* at 15.

It is not enough for plaintiff to show that the employer made an unwise business decision, or an unnecessary personnel move. Nor is it enough to show that the employer acted arbitrarily or with ill will.

These facts, even if demonstrated, do not necessarily show that age was a motivating factor.

*Gray v. New England Telephone & Telegraph Co.,* 792 F.2d 251, 155 (1st Cir. 1986).

We do not think plaintiff has established a *prima facie* case. He has conclusively proved three out of the four required factors: he was 46 years old when fired and his sales territory is now served by two persons under 40 years old. However, we are not sure plaintiff proved the fourth factor, *i.e.,* that he was qualified to remain in his position.

■ To be "qualified", plaintiff must have been "performing his job at a level that met his employer's legitimate expectations." *Loeb,* 600 F.2d at 1004. Plaintiff must demonstrate to the satisfaction of his employer and the Court that he was performing adequately. *Kephart v. Institute of Gas Technology,* 630 F.2d 1217 (7th Cir. 1980). American Cyanamid was not convinced and neither are we.

Plaintiff's sales performance was under fire throughout 1985. He was even asked for his resignation on December 9, 1985. His 1985 sales were substantially below those of 1984 until the last two months of 1985, when he made a big push but still fell short of equalizing his 1984 sales.[29] Even though he almost made it, his performance had been subpar for most of 1985. His sales techniques were also criticized throughout 1985. Torregrosa accompanied him to many sales visits and was not satisfied with what he saw. The evaluation

**29.** There is some controversy as to plaintiff's final 1985 sales computation. Torregrosa, Méndez and Brigantty decided to fire plaintiff on January 2, 1986, based on Torregrosa's manual calculations. These were the most current figures available at that time and their accuracy was corroborated in the June 1986 final sales report. It would have been no use for them to wait for the January 7, 1986, preliminary report because Torregrosa's calculations were more up to date. In any event, it is a business judgment call we do not have to review.

Plaintiff also tries to bolster his discrimination argument by telling us that the final sales report discounted from his 1985 sales the 1986 "credit notes", *supra,* p. 306, received after his discharge, while the "credit notes" of salespersons not fired were discounted from their 1986 sales. We fail to understand how the final report is probative of an alleged discriminatory act occurring 6 months prior to its issuance. Plaintiff could have proved some discriminatory intent if he would have shown that, at the time the decision to fire him was made, other salespersons' performance were evaluated without taking into consideration 1986 "credit notes" of products sold in 1985. Such evidence has not been proferred. Actually, based on the evidence before us, *i.e.,* that Torregrosa could calculate plaintiff's final sales figures by January 2, 1986, we could infer that other supervisors knew the final 1985 sales of their supervisees by that date and decided not to take any action.

sheets evince a deterioration in plaintiff's selling techniques. He was told of this problem during the meetings with his superiors. They were not pleased with his reaction to criticism.

Plaintiff also lacked the necessary aggressiveness in the eyes of his supervisor. In his meetings with Torregrosa, plaintiff was told of several alternatives to improve his sales. He did not pay much attention to them. Plaintiff tries to refute this criticism by making reference to a salary increase and incentive bonuses he received in 1985.[30] But the salary hike was obtained by all employees in plaintiff's department regardless of merit.[31] And the bonuses were for meeting his quota for a particular product or quarter of the year. Those facts are very weak proof that plaintiff was being as aggressive as American Cyanamid wanted him to be.

Furthermore, plaintiff was not making the required daily visits to doctors. His excuses for not doing so were lame—rainy days or "nobody else is doing it". Neither was Torregrosa happy with plaintiff's sales and approach to the public health centers. It was legitimate for American Cyanamid to expect plaintiff to go to the limit in these two areas given his low sales. In essence, since plaintiff "was not doing what his employer wanted him to do, he was not doing his job." *Kephart*, 630 F.2d at 1223.

▪ Plaintiff also attempts to establish his *prima facie* case by direct evidence of discrimination. He alleges that the "veterans" in the company were treated disrespectfully. Based on (a) two affidavits by "non-veterans" declaring that such was the impression they got from salespersons' monthly meetings, and (b) plaintiff's affidavit in which he declares that Torregrosa often said in such meetings: "veterans are always complaining and asking, why don't you [veterans] do like Juan Gerardo [a non-veteran], that follows instructions without complaining."[32] As to the former, it is

weak, almost inadmissible proof. Why did plaintiff not depose the company persons who uttered disrespectful words and tell us in what specific context were these said? Why do the affidavits of the "veterans" make no reference to this allegedly disrespectful treatment?

As to Torregrosa's alleged commentary, we have contradictory evidence as to whether it was actually made. In his affidavit, plaintiff declares Torregrosa usually uttered it during sales meetings. Again, plaintiff fails to be specific. On the other hand, in his deposition plaintiff said that neither Torregrosa, nor Méndez nor Brigantty ever made comments regarding his age.[33] Even if we assume Torregrosa did make such comments, a reasonable inference cannot be drawn from those isolated statements that age discrimination was a determinative factor in American Cyanamid's decision to fire plaintiff. *Gray*, 792 F.2d at 255. The alleged statement itself is vague and open to many interpretations.

Plaintiff's rest of direct evidence on discrimination is equally weak. He claims five other salespersons did not equalize their 1984 sales in 1985, yet only one was fired. However, American Cyanamid offers reasons for not discharging the rest and plaintiff does not contest them. Plaintiff also tries to show discrimination by pointing at American Cyanamid's hiring patterns. He claims that during 1985 the company hired 15 new salespersons with an average age of 29.8.[34] We believe statistical evidence has little probative value in age discrimination cases, *see* Larson, *Employment Discrimination*, Vol. 3A, § 102.44, especially that offered by plaintiff, which deals with American Cyanamid's hiring practices while this suit is about a discharge. It suffices to quiet this point by saying that

[t]he progression of age is a universal human process. In the very nature of the problem, it is apparent that in the

---

30. Exhibits 16 and 17, Plaintiffs' Opposition.

31. Exhibit 1, pars. 12 and 13, Defendant's Statement.

32. Exhibit C, par. 6, Plaintiffs' Opposition.

33. Exhibit VII, Defendant's Statement.

34. Plaintiffs' Opposition, p. 3.

usual case, absent any discriminatory intent [which we do not find here], discharged employees will more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in. *Laugesen v. Anaconda Co.,* 510 F.2d 307, 313 (6th Cir.1975).

Plaintiff has not made his *prima facie* case under either the *Loeb* four-factor test or by presenting direct discrimination evidence. But even if we were to assume *arguendo* that he has established it, he clearly has not shown that American Cyanamid's reasons for firing him were a mere pretext and, thus, we would still have to dismiss this case under *Loeb*.

At this stage of the *Loeb* analytical framework, we must determine "whether there was sufficient evidence of unsatisfactory performance to be a legitimate concern of [the] employer." *Douglas v. Anderson,* 656 F.2d 528, 533 n. 5 (9th Cir. 1981). Plaintiff's lackluster sales up to the final two months of 1985, his inability to equalize 1984 sales in 1985, his supervisor's constant criticism about his salesmanship and the personal conflict between them certainly are "legitimate concerns." And "after extensive discovery, at best all [plaintiff] could present was evidence casting doubt on the correctness of the employer's proferred reason[s] for the discharge. This [is] insufficient to prove pretext or discriminatory intent." *Dea,* 810 F.2d at 15.

As to plaintiff's action under Puerto Rico's Law 100, we decline to exercise pendent jurisdiction. "When a single federal-law claim in the action [is] eliminated at an early stage of litigation, this [Court has] a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie Mellon University, et al v. Cohill,* — U.S. —, ——, 108 S.Ct. 614, 617–19, 98 L.Ed.2d 720 (1988). In cases like this one, "in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 7. Our only concern would be whether plaintiff can pursue his claim in the local courts. Since the complaint was filed within a year of the discharge, plaintiff interrupted the local claim's one-year prescription. *Olmo v. Young & Rubican of P.R., Inc.,* 110 D.P.R. 740 (1981); and *Silva Wiscovich v. Weber Dental Mfg., et al,* 87 JTS 93. Thus, he may still litigate his claim in the local forum.

WHEREFORE, for the reasons stated, defendant's motion for summary judgment is hereby GRANTED as to the ADEA-based cause of action, and Puerto Rico's Law 100 cause of action is hereby DISMISSED without prejudice.

IT IS SO ORDERED.