Ronald W. BURKE, Lucy Burke, and their conjugal partnership, John P. Sutton, and Ivonia Sutton, a minor herein represented by her father John P. Sutton, Plaintiffs,

v.

COMPAGNIE NATIONALE AIR FRANCE, Defendant.

Civ. No. 87-1833 (JP).

United States District Court, D. Puerto Rico.

Nov. 19, 1988.

Gerardo Mariani, Woods & Woods, Hato Rey, P.R., for plaintiffs.

Diego A. Ramos, Fiddler, González & Rodríguez, San Juan, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

On February 21, 1986, plaintiffs Ronald Burke and John Sutton boarded Air France Flight 363 in Port Au Prince, Haiti, for a flight home to San Juan, Puerto Rico.[1] The plane was scheduled to continue on to the sunny French island of Guadaloupe after leaving plaintiffs contendedly at their destination with their families.

But over the rough seas of the Mona passage, between the Dominican Republic and Puerto Rico, tragedy struck! The plane developed engine trouble and began to shake. One passenger, a Haitian woman, frantically ran up and down the aisles screaming hysterically. Plaintiffs, a U.S. Government employee and an executive, were wrought with anguish as the captain announced that there was a problem.

---

1. The case being before the Court on a motion to dismiss, the facts alleged by plaintiffs must be accepted as true.

Soon, plaintiffs realized that the plane would not land at the nearest jet airport, at Aguadilla. Fearing that the pilot had no concern for his or their well-being in his daring attempt to make it to San Juan, plaintiffs became more distressed. Their anguish intensified further when they saw that they were flying *over* the airport at San Juan and learned that they were continuing on to Guadaloupe.

Meanwhile, back at the ranch, Lucy Burke arrived at the San Juan airport to pick up her husband. Thirty minutes after the scheduled arrival time, Mrs. Burke was informed that her husband had been flown to Guadaloupe, which made her nervous, anxious, and extremely upset. Her distress was compounded when she heard that her husband was not to be returned to her until the next day.

While Mrs. Burke waited, so did Ivonia Sutton, John Sutton's fifteen year-old daughter. Upon telephoning her father's office and learning of the delay but hearing no more information, she waited nervously until she was told that her father was in Guadaloupe and would not be back until the next day. Alone and scared, she had to spend the night under great stress, mental anguish, and anxiety.

On February 11, 1987, plaintiffs filed suit against Air France in this Court. Upon expiration of the six-month period for service of process under Puerto Rico Rule of Civil Procedure 4.3(b), Judge Lafitte ordered plaintiffs to show cause why the suit should not be dismissed for failure to serve defendant. Rather than respond, on October 16, 1987, plaintiffs filed for voluntary dismissal without prejudice pursuant to Fed.R.Civ.P. Rule 41(a)(1). The present lawsuit followed on December 17, 1987.

Before the Court are defendant's motion to dismiss by reason of the statute of limitations and for failure to state a claim upon which relief can be granted, and defendant's motions to strike jury demand on the grounds of Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, and for non-resident bond.

## A. Statute of Limitations

Article 1868 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5298, provides a one-year statute of limitations (prescription) for tort actions. Defendant contends that, since the incident giving rise to the suit occurred on February 21, 1986, and the suit was not filed until December 17, 1987, the action is time-barred.

In most states defendant's position would be correct. The statute of limitations would be tolled, at most, for the time that the first voluntarily dismissed suit was pending, and the statute would have run on October 26, 1987. However, the civil law in Puerto Rico mandates a different result.

In *Silva Wiscovich v. Weber Dental Mfg. Co.*, 87 J.T.S. 93 (P.R.1987), the Puerto Rico Supreme Court considered a situation virtually identical to this case. On a question certified by the U.S. Court of Appeals for the First Circuit, *see Silva Wiscovich v. Weber Dental Mfg. Co.*, 835 F.2d 409 (1st Cir.1987), the Court held that when a case under Puerto Rico law is voluntarily dismissed without prejudice in federal court before service, the statute of limitations is not only tolled in the common law sense, but *begins to run anew* as of the date of dismissal. 87 J.T.S. 93 at 5133, 835 F.2d at 410.

Defendant attempts to distinguish *Silva Wiscovich* in that in the present case the six-month period in which to serve defendant had expired, and an order to show cause had issued before the voluntary dismissal. This distinction is unavailing, as the reasoning in *Silva Wiscovich* applies equally well to any case dismissed without prejudice. *See, e.g. Baez v. American Cyanamid Co.*, 685 F.Supp. 303, 309 (D.C. P.R.1988) (pendent Puerto Rico law claims dismissed without prejudice, in effect for lack of jurisdiction, because they can be refiled in Puerto Rico court without being time-barred, citing *Silva Wiscovich* ); *Rodríguez Garcia v. Dávila*, No. 87-1411(JP), slip op. at 14 (D.C.P.R. Nov. 9, 1988) [available on WESTLAW, 1988 WL 124046] (same). It is the "mere filing of the action" which tolls the statute of limitations. *Silva Wiscovich*, 87 J.T.S. at 5132,

*quoting* Broca & Majada, *Práctica Procesal Civil*, 862–63 (20th Bosch ed. 1984). In fact, *Silva Wiscovich* also dealt with voluntary dismissal after an order to show cause for failure to effect service, although not based on the six-month service period of Puerto Rico Rule 4.3(b). This distinction is meaningless in light of *Silva Wiscovich*, and the instant action is not time-barred.

### B. *Viability of Claims*

The defendant further contends that the action, at least as far as minor plaintiff Ivonia Sutton is concerned,[2] fails to state a claim upon which relief can be granted in that her alleged mental distress was "nonserious." Again, differences between Puerto Rico's civil law and United States common law render defendant's contentions meritless.

As stated in W.P. Keeton, et al., *Prosser & Keeton on Torts* 361 (5th ed. 1984):

> Where the defendant's negligence causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, and in the absence of some other independent basis for tort liability, the great majority of courts still hold that in the ordinary case there can be no recovery. The temporary emotion of fright, so far from serious that it does no physical harm, is so evanescent a thing, so easily counterfeited, and usually so trivial, that the courts have been quite unwilling to protect the plaintiff against mere negligence, where the elements of extreme outrage and moral blame which have had such weight in the intentional tort context are lacking. Other unpleasant emotions, such as the distress of a mother at being given the wrong baby by a hospital have been dealt with on the same basis. Nor may it make any difference that there has been a harmless but emotionally disturbing contact with the plaintiff's person, as

where he gets a mouthful of broken glass without actually being cut.

Traditionally under the common law, recovery has only been allowed for emotional or mental distress when the plaintiff has also experienced physical injury: the "impact" rule. This rule has been broadened in many jurisdictions to allow recovery by a plaintiff, not physically injured, who was in the "zone of danger" at a time when another person *was* physically injured. Some jurisdictions, California, for example, *see Dillon v. Legg*, 68 Cal.2d 728, 441 P.2d 912, 920, 69 Cal.Rptr. 72, 80 (1968), go so far as to allow recovery for serious mental distress when the plaintiff is a physical, temporal, and relational proximity to a person physically harmed—the "bystander proximity doctrine:" the plaintiff must be near the accident, must observe it, and must be closely related to the victim. *See generally Prosser & Keeton, supra,* at 362–66.

In the civil law system in Puerto Rico, in contrast, there is no distinction drawn between types of damages. Pursuant to Article 1802 of the Civil Code, mental suffering is generally just as compensable as physical harm.[3]

Although some common law principles have been introduced judicially into Puerto Rican tort law, *see* H.M. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico,* 141–42 (2d ed. 1986), the Puerto Rico Supreme Court has specifically held that common law limits on liability for mental and emotional damages fundamentally conflict with Puerto Rican juridical tradition and principles and would not be adopted. *Infante v. Leith,* 85 P.R.R. 24, 35–36, 38 n. 4 (1962).

█ The breadth of Art. 1802 has been recognized by this Court:

> Without unnecessarily digressing into pedantic legal philosophy, suffice it to say that this article establishes what is prob-

---

**2.** As Ivonia is a minor, the statute of limitations as to her claim does not run until her 22nd birthday. 32 L.P.R.A. § 254(1). Thus this basis for dismissal was alleged only as to her.

**3.** Article 1802 of the Civil Code, 31 L.P.R.A. § 5141, provides:

> A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done.

ably the broadest basis for tort liability in any jurisdiction of the United States. *Clemente v. United States,* 426 F.Supp. 1, 2 (D.C.P.R.1977). The First Circuit has recognized the principle as well. *See Room v. Caribe Hilton Hotel,* 659 F.2d 5, 8 n. 3 (1st Cir.1981) ("A plaintiff may recover damages for mental suffering, even without any physical injury being alleged or proven.") Liability under Art. 1802 requires proof of only three elements: 1) negligent or culpable conduct; 2) harm; and 3) a legally sufficient causal connection between the conduct and the harm. Brau, *supra* at 141.

Defendant cites one Puerto Rico case which stated "as to moral damages, it is essential to prove deep moral suffering and anguish, and a passing affliction would not give rise to an action." *Hernández v. Fournier,* 80 P.R.R. 94, 104 (1957). That case, however, dealt with *who* can recover for the death of another, rather than what damages can be recovered, and the quoted sentence was only justification for the rule limiting recovery to relatives of the deceased. In *Duchesne Landrón v. Ruiz Arroyo,* 102 D.P.R. 699, 702 (1974), mental anguish damages in *contract* cases were limited, but this has no bearing on tort damages.

Defendant also refers the Court to various federal cases in which jurisdiction was based on 28 U.S.C. § 1332. In cases under this section, which requires diversity of citizenship and a $10,000 minimum damages amount, this Court has held that allegations of non-serious emotional distress damages have failed to satisfy the $10,000 jurisdictional amount. *See Reyes v. Eastern Airlines, Inc.,* 528 F.Supp. 765, 767 (D.C.P.R.1981); *Porrata v. Wackenhut Corp.,* 88 D.C.O. 003 at 7 (D.C.P.R.1988). In this case, with jurisdiction founded upon the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, *see* Part C, *infra,* no juris-

dictional amount is necessary, rendering inapposite the cited cases.

In sum, this Court holds that all four plaintiffs have sufficiently alleged in their complaint the three elements of a claim for damages under Art. 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141, which does not limit recovery for mental anguish, and have not failed to satisfy a jurisdictional amount because none is required. They have stated a claim upon which relief, however small, can be granted, and the motion to dismiss must be denied.

### C. *Motion to Strike Jury Demand*

■ Defendant, Air France, is a corporation almost (over 98%) fully owned by the government of the Republic of France, a foreign state. It is an agency or instrumentality of France, 28 U.S.C. § 1603(b), and thus falls within the provisions of the Foreign Sovereign Immunities Act. Pursuant to another section of that Act, 28 U.S. C. § 1605(a)(2), there is no immunity from the jurisdiction of United States courts for actions based on commercial activity of the foreign state. Operation of an airline is squarely within the commercial activity exception.[4] *See Arango v. Guzmán Travel Advisors Corp.,* 621 F.2d 1371, 1379–80 (5th Cir.1980).

Jurisdiction over a foreign state as to any claim for relief with respect to which it is not entitled to immunity is provided for in 28 U.S.C. § 1330(a). That section grants jurisdiction only over nonjury civil actions. Congress was not required to allow jury trials because, at common law, no civil actions were allowed against foreign states, and thus the Seventh Amendment is inapplicable. *See Ruggiero v. Compañía Pesquera de Vapores,* 639 F.2d 872, 880–81 (2d Cir.1981); *Arango v. Guzmán Travel Advisors,* 761 F.2d 1527, 1534 (11th Cir.1985). Therefore, plaintiffs are not entitled to a jury trial, and the Motion to Strike Jury Demand is GRANTED.[5]

---

**4.** 28 U.S.C. § 1608 provides specific requirements for service of process as well, but defendant has waived any objections to service by answering without objection.

**5.** Plaintiffs' allegation of diversity jurisdiction under 28 U.S.C. § 1332 is to no avail. Defend-

ant is a "foreign state," as defined, not a citizen or subject of a foreign state. In the 1976 amendment to § 1332, Pub.L. 94–583, § 3, 90 Stat. 2891, foreign states were removed from the diversity statute as the same legislation provides for actions against them under § 1330.

### D. *Non–Resident Bond*

Defendant has moved, finally, for the imposition on plaintiffs of a non-resident bond pursuant to Local Rule 304. They have requested $10,000 per plaintiff.

This amount is vastly excessive. "While it is neither unjust nor unreasonable to expect a suitor to 'put his money where his mouth is,' ... toll-booths cannot be placed across the courthouse doors in a haphazard fashion.... The rule is a scalpel, to be used with surgical precision as an aid to the even-handed administration of justice, not a bludgeon to be employed as an instrument of oppression." *Aggarwal v. Ponce School of Medicine*, 745 F.2d 723, 728 (1st Cir.1984).

Pursuant to Local Rule 304, bond is SET at $250.00 per plaintiff, to be posted on or before the date set herein for the Initial Scheduling Conference.

### E. *Conclusion*

For the reasons given above, defendant's motion to dismiss is DENIED on both asserted grounds. The motion to strike jury demand is GRANTED, and the motion for non-resident bond is GRANTED in the amount of $250.00 per plaintiff.

The Clerk shall SET an Initial Scheduling Conference for January 11, 1989, at 2:00 p.m. The parties are expected to be prepared for the conference as ordered in the Initial Scheduling Conference Call to be issued by the Clerk. *See* Pieras, *Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method*, 35 Cath.U.L.Rev. 943 (1986).

The Clerk shall act accordingly.

IT IS SO ORDERED.