**Emil D. POKLITAR, Plaintiff,**

v.

**CBS, INC., Defendant.**

**No. 84 Civ. 2245 (JMW).**

United States District Court,
S.D. New York.

Jan. 7, 1987.

Philip E. Silberberg, New York City, for plaintiff.

Ronald E. Guttman, New York City, for defendant.

## MEMORANDUM AND ORDER

WALKER, District Judge:

### INTRODUCTION

Defendant CBS, Inc. ("CBS") brings the instant motion for summary judgment on a complaint filed by Plaintiff Emil Poklitar ("Poklitar"), which alleges causes of action under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* and state contract law. Plaintiff's suit arises out of his termination by defendant in 1983, when defendant consolidated one of its New York departments with a similar office in Los Angeles.

For the reasons set forth below, the instant motion for summary judgment on plaintiff's ADEA claim is denied. Defendant's motion for summary judgment on the state contract law claim is granted.

### STATEMENT OF FACTS

Plaintiff Poklitar, age 64, commenced his employment with Defendant CBS in October 1956. Plaintiff initially worked as an administrative assistant in the Music Clearance Division of defendant's Music Operations Department in Manhattan. During plaintiff's tenure, he was promoted twice. Plaintiff's second promotion, occurring in 1970, was to the position of associate director of the Music Clearance Division, which he held until his 1983 termination.

Plaintiff and defendant never entered into a written employment agreement.

Plaintiff possessed a CBS Administrative Policy Manual, which stated that when executives considered terminating any employee with at least 15 years seniority:

> The feasibility of placing such individuals in other jobs within the Company must be considered before any action is taken....

During plaintiff's tenure, defendant maintained Music Operations Departments in both New York and Los Angeles. However, the work of the Los Angeles office became increasingly important, as evidenced by the decreasing size of the New York Music Clearance Division where plaintiff worked. Plaintiff at one time supervised as many as 11 employees in his division, but by 1982, plaintiff supervised only four employees.

In March 1982, Harry Heitzer ("Heitzer") was appointed as defendant's vice president for business affairs, with his responsibilities including oversight of the Music Operations Department. Heitzer, who worked in Los Angeles, decided to consolidate the New York and Los Angeles offices of this department in a single Los Angeles office. At the time of Heitzer's decision to close defendant's New York Music Operations Department, four of the five employees in the New York Music Clearance Division where plaintiff worked were more than 40 years old. The New York employees eventually were replaced by new hires in Los Angeles, all of whom were under 40 years old. An August 4, 1982 memo authored by Heitzer estimated that defendant would save more than $150,-000 in salaries by closing the New York Music Operations Department, of which the Music Clearance Division was a principal component, and consolidating its functions with those of the Music Operations Department in Los Angeles.

This consolidation of defendant's Music Operations Department in Los Angeles eliminated jobs held by eight New York employees, including the five workers in plaintiff's division. Heitzer met with each of these employees, including plaintiff, after announcing that defendant would soon eliminate their jobs. During their meeting, Heitzer described plaintiff as "redundant."

Five of the eight employees affected by the consolidation opted for severance pay, rather than seeking continued employment with defendant. Of the three remaining employees, only plaintiff failed to receive an offer for a new job with defendant. Both of plaintiff's job-seeking colleagues, Virginia Arroyo, age 45, and Michael Constantine, age 57, received new jobs with defendant in New York.[1] However, plaintiff failed to receive an offer for a new job in either New York or Los Angeles.

In his own search for continued employment, plaintiff spoke to about 75 of defendant's employees. He also met twice with defendant's Placement Manager Linda Kalarchian ("Kalarchian"). Between these meetings, plaintiff sent a memorandum on his difficulties in finding a new job to Kalarchian and several of defendant's executives. At his second meeting with Kalarchian, plaintiff produced a resume, which Kalarchian regarded as a "very broad listing of areas of expertise," and thus unacceptable. Kalarchian also viewed plaintiff as unwilling to review job openings posted by her office on a regular basis. Nonetheless, Kalarchian suggested that plaintiff send a copy of his resume to Lynne Wellbrock, another placement employee. Plaintiff scheduled an appointment with Wellbrock to discuss his job search, but plaintiff failed to keep this appointment or to schedule another meeting.

Plaintiff's last day of work for defendant occurred on July 15, 1983. Although plaintiff "contacted about 20 companies outside CBS for a job," this search ultimately proved futile. Plaintiff first claimed age discrimination in an October 1983 complaint filed with the New York State Division of Human Rights. This complaint was the first in a series of events that eventually culminated in the instant suit.

---

**1.** Arroyo's and Constantine's ages are computed as of 1983, when Constantine received his new job. At that time, Plaintiff Poklitar was 61 years old.

## DISCUSSION

A court may grant summary judgment only where "there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, "a court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought...." *Patrick v. LeFevre*, 745 F.2d 153, 158 (2d Cir.1984). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

While this Court holds that plaintiff has presented no facts that would support a jury verdict on his state law contract claim, this Court also concludes that a jury could reasonably return a verdict for the plaintiff on his federal age discrimination claim. Accordingly, defendant's motion for summary judgment on the federal claim is denied.

*Age Discrimination*

The ADEA prohibits any employer from taking action "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age...." 29 U.S.C. § 623. A three-part test has been developed for evaluating employment discrimination cases, including ADEA actions:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory, reason for the employee's rejection....' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting in part *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 324 (2d Cir.1983).

■ Under this test, a plaintiff bringing an ADEA action must first state a *prima facie* case of age discrimination to withstand a motion for summary judgment. *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 919–20 (2d Cir.1981). To state such a *prima facie* case where plaintiff's discharge occurred as part of an employer's work force reduction or business relocation, a plaintiff must show: 1) that he is within the age group protected by the ADEA; 2) that he was qualified to assume another position and 3) that some evidence exists from which a fact-finder might reasonably conclude that the employer intended to discriminate against older employees. *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *E.E.O.C. v. Trans World Airlines, Inc.*, 544 F.Supp. 1187, 1218 (S.D.N.Y. 1982).

■ Plaintiff, 61 years old at the time of his termination, clearly falls within the age group protected by the ADEA, which includes workers ranging from 40 to 70 years old. 29 U.S.C. § 631. Plaintiff also has fulfilled the second element necessary for a *prima facie* case of age discrimination since defendant concedes that plaintiff was qualified to assume another position. Plaintiff's statement of a *prima facie* ADEA claim in the instant case thus hinges on the presence or absence of evidence leading a reasonable factfinder to conclude that the employer intended to discriminate on the basis of age. On this issue, the plaintiff has the burden of proving that "age was the determining factor in his discharge in the sense that, 'but for' his employer's motive to discriminate against him because of age, he would not have been discharged." *Pena v. Brattleboro*

*Retreat,* 702 F.2d 322, 323 (2d Cir.1983) (citations omitted); *accord Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 82 (2d Cir. 1983).

As evidence of defendant's discriminatory intent, plaintiff first points to the August 4, 1982 memorandum, which shows that defendant could save $150,000 in salaries by replacing plaintiff and other New York employees with new and presumably younger employees, who would work in Los Angeles and earn lower wages. Second, plaintiff points to the fact that defendant's relocation of the Music Operations Department in Los Angeles resulted in replacing eight New York employees, most of whom were more than 40 years old, with five Los Angeles employees, all of whom were less than 40 years old. Third, plaintiff notes a conversation where Heitzer described plaintiff as "redundant." Finally, plaintiff discusses defendant's failure, after eliminating plaintiff's New York position, to offer plaintiff another job in New York or Los Angeles, despite defendant's own admission that plaintiff was qualified to assume such an alternative position.

Defendant asserts that each piece of evidence introduced by plaintiff provides no support for plaintiff's suggestion of discriminatory intent. For example, defendant describes the memo projecting $150,000 in salary savings as reflecting the smaller number of workers that defendant would require after consolidating Music Clearance functions in Los Angeles, rather than demonstrating that defendant sought to save money by replacing high-salaried older employees with junior employees paid at a lower wage rate. While defendant's description of the August 4, 1982 memo is plausible, plaintiff's alternative interpretation also appears plausible. In short, "[w]hether the statements in question comprise a 'smoking gun' evidencing a policy of age discrimination or are wholly innocuous is largely a question of credibility, an issue properly left for trial." *Meschino v. International Telephone & Telegraph Corp.,* 563 F.Supp. 1066, 1072 (S.D.N.Y.1983). *See also Blim v. Western Electric Co.,* 731 F.2d 1473, 1477 (10th Cir.1984), *cert. denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984).

Defendant's argument for summary judgment also erroneously considers each piece of evidence offered by plaintiff to prove discriminatory intent in isolation, rather than discussing the entire record compiled by plaintiff. For example, defendant is quite correct that Heitzer's statement describing plaintiff as "redundant" would, standing alone, constitute insufficient evidence of discriminatory intent to bring the instant case to a jury. *See Loeb v. Textron,* 600 F.2d 1003, 1019 (1st Cir.1979); *Smith v. Flax,* 618 F.2d 1062, 1066 (4th Cir.1980). However, precedent in this circuit indicates that, given the complete record in this case, plaintiff has produced sufficient evidence of discriminatory intent to withstand a summary judgment motion.

Specifically, the facts in the instant case appear strikingly similar to those in *Deutsch v. Carl Zeiss, Inc.,* 529 F.Supp. 215 (S.D.N.Y.1981). In *Deutsch,* plaintiff's Manhattan secretarial job was eliminated when defendant "phased-out" her department, transferring its responsibilities to another office. *Id.* at 217. Like defendant in the instant case, the *Deutsch* defendant moved the three other secretaries affected to another of its Manhattan offices, but failed to offer plaintiff the same opportunity to relocate. *Id.* at 217 n. 1, 218. On this basis, the *Deutsch* court denied defendant's motion for summary judgment.[2] *See also Haskell v. Kaman Corp.,* 743 F.2d 113, 120 (2d Cir.1984).[3]

---

**2.** If anything, plaintiff has made a stronger showing of intent to discriminate in the instant case than that produced by the *Deutsch* plaintiff. While the *Deutsch* defendant offered the terminated employee work at her department's new location, a job which admittedly would have required the employee to undertake a daily commute of about five hours, Defendant CBS offered Poklitar no similar opportunity to move to defendant's Los Angeles office.

**3.** In *Haskell,* the Second Circuit Court of Appeals upheld a jury verdict for plaintiff based on ambiguous statements suggesting a bias against

In addition, plaintiff's replacement of senior New York employees with younger employees in Los Angeles, a type of evidence not offered in *Deustch*, supports plaintiff's *prima facie* case. *See Geller v. Markham*, 635 F.2d 1027, 1034 (2d Cir. 1980), *cert. denied*, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979). "Although replacement by someone younger, without more, will not give rise to an inference of age discrimination, it has been noted that a substantial difference in the ages may be circumstantial evidence that gives rise to that inference." *Maxfield v. Sinclair International*, 766 F.2d 788, 792 (3rd Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). Such a substantial difference exists in the instant case. While at least four of the eight employees in defendant's former New York Music Operations Department were more than 40 years old, all of the five new employees hired in the Los Angeles Music Operations Department after defendant closed the New York office were less than 40 years old.

Having found sufficient factual issues to foreclose defendant's summary judgment motion for lack of a *prima facie* case of age discrimination, this Court next examines whether defendant has produced a nondiscriminatory reason for plaintiff's termination. Defendant contends that the efficiency resulting from consolidating Music Clearance functions in Los Angeles represents a legitimate business justification for this personnel decision. While the Court does not question defendant's assertion that the transfer to Los Angeles represented a pragmatic business decision, this Court does question defendant's failure to offer plaintiff a position with the relocated division in Los Angeles, or with another of defendant's New York offices.

Plaintiff's age may have had little bearing on defendant's decision not to offer plaintiff such a position. The parties' papers suggest that Heitzer and plaintiff may not have enjoyed a congenial relationship. Defendant's Personnel Manager Linda Kalarchian also seemed to find plaintiff less than completely cooperative. If the decision to terminate plaintiff resulted from his inability to work with other employees, defendant would have a legitimate justification for this decision. "The Age Discrimination in Employment Act does not authorize the courts to judge the wisdom of a corporation's business decisions." *Parcinski v. Outlet Co.*, 673 F.2d 34, 37 (2d Cir. 1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983); *accord Holley v. Sanyo Manufacturing, Inc.*, 771 F.2d 1161, 1166 (8th Cir.1985); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir.1982).

On the other hand, allusions to plaintiff's uncooperative behavior may represent nothing more than an *ex post* justification for a personnel decision resulting solely from plaintiff's relatively advanced age. Plaintiff's prior promotion, as well as defendant's admission that plaintiff was qualified to assume another position, appear inconsistent with defendant's claimed justification for not offering plaintiff a position. In short, the question of whether defendant has produced an adequate business justification for terminating plaintiff also raises issues of material fact which this Court cannot resolve in a summary judgment motion.

This Court also finds genuine issues of material fact relating to the third element of the *Burdine* test, which requires proof that the defendant's asserted business justification for the challenged action was "pretextual." This third element has received little elaboration in ADEA decisions, with plaintiffs who have demonstrated a *prima facie* case also typically fulfilling the third element. *See, e.g., Williams v.*

---

senior employees and the replacement of plaintiff with a 29-year-old worker. 743 F.2d at 120. Admittedly, the plaintiff in *Haskell* introduced evidence that, "over a period of many years," defendant had dismissed other senior employ-

ees. While plaintiff has introduced no similar evidence in the instant case, defendant also has failed to introduce evidence, offered in *Haskell*, that plaintiff's job performance had deteriorated prior to his termination. *Id.*

General Motors Corp., 656 F.2d 120, 129–30 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *Meschino v. International Telephone & Telegraph Corp.*, 563 F.Supp. 1066, 1069–71 (S.D.N.Y.1983).

Nonetheless, defendant asserts that a reasonable jury could not find that the business rationale which led to the closing of the New York office was a pretext for invidious age discrimination against plaintiff. Defendant emphasizes its continued employment of Arroyo and Constantine, who were more than 40 years old when defendant relocated the New York Operations Music Department. Defendant concludes that, in light of its placement of these employees, plaintiff's failure to find a new position could have resulted only from his lack of desire to continue working for defendant. Specifically, defendant charges that plaintiff did not produce a polished resume, failed to schedule more than two meetings with members of defendant's placement department, and did not aggressively pursue job openings posted by the placement department.

■ Defendant's relocation of Arroyo and Constantine is significant evidence that the asserted business justification was not a pretext for age discrimination. However, the continued employment of Arroyo and Constantine is not dispositive of this issue. "Congress never intended favorable treatment of some members of a plaintiffs' age group to excuse discrimination against others." *Air Line Pilots Association International v. Trans World Airlines, Inc.*, 713 F.2d 940, 953 (2d Cir.1983), *aff'd in part, rev'd in part on other grounds, Transworld Airlines v. Thurston*, 469 U.S. 1111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *accord Meschino v. International Telephone & Telegraph Corp.*, 563 F.Supp. 1066, 1069–70 n. 5 (S.D.N.Y.1983). An employer who actively seeks to terminate older employees may not mask his intent by discriminating sporadically. The continued employment of Arroyo and Constantine thus is not inherently inconsistent with the termination of plaintiff because of his age.

Defendant's argument that plaintiff had little interest in continued employment with defendant receives only limited support from the record. Defendant does not dispute plaintiff's assertion that he contacted about seventy-five of defendant's employees in searching for another job within the company. Although defendant criticizes the resume Poklitar prepared as "a very broad listing of areas of expertise," defendant's 27 years as plaintiff's employer should have provided it with ample information as to plaintiff's background. While Poklitar may have undertaken a less intensive job search than did some of his veteran co-workers, this Court is not convinced that he was completely uninterested in further employment.

■ The record contains sufficient ambiguities to foreclose summary judgment on the merits of plaintiff's ADEA claim. Accordingly, defendant's motion for summary judgment on this claim is denied.

*Breach of Contract*

Defendant also moves for summary judgment on plaintiff's claim that a CBS policy manual created an implied contract, requiring defendant to discharge plaintiff only after satisfying certain "terms and conditions." Under New York law, an express provision in a personnel handbook may create such an implied contract. *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982). A court must consider "the totality of circumstances," in determining whether an intracorporate document constitutes an implied employment contract. *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 852 (2d Cir. 1985).

■ In the instant case, this Court cannot conclude that defendant's policy manual created contractual rights which plaintiff may invoke. First, the statements in defendant's policy manual lack the specificity necessary for contractual representations. The policy manual stated only that "an effort should be made" to accommodate employees with more than 15 years

seniority prior to their discharge. Defendant's policy manual thus appears far different from an operations manual, promising that "[s]eniority shall be the sole factor determining demotions, transfers or termination," which the Second Circuit described as creating an implied contract. *Id.* at 850. A New York state court panel dismissed an effort, similar to plaintiff's in the instant case, to derive an implied contract from a manual that provided "only general policy statements and supervisory guidelines." *Patrowich v. Chemical Bank*, 98 A.D.2d 318, 322, 470 N.Y.S.2d 599, 603 (1st Dep't 1984), *aff'd*, 63 N.Y.2d 541, 473 N.E.2d 11, 483 N.Y.S.2d 659 (1984).

Plaintiff also has failed to demonstrate that he relied on defendant's policy manual, either when he took his position at CBS, or at any time during his tenure as defendant's employee. Plaintiff's papers make only the conclusory allegation that he delayed an outside job search in reliance on defendant's policy manual—an allegation contradicted by plaintiff's own deposition testimony that he "contacted about 20 companies outside of CBS for a job." New York courts have routinely dismissed implied contract claims where employees have failed to show reliance. *See, e.g., O'Connor v. Eastman Kodak Co.*, 65 N.Y.2d 724, 726, 481 N.E.2d 549, 550, 492 N.Y.S.2d 9, 10 (1985), *reh'g denied*, 65 N.Y.2d 1059, 489 N.E.2d 1055, 494 N.Y.S.2d 1033 (1985); *O'Donnell v. Westchester Community Service Council, Inc.*, 96 A.D.2d 885, 885, 466 N.Y.S.2d 41, 42 (2d Dep't 1983).

Accordingly, defendant's motion for summary judgment on plaintiff's state law claims is granted.

## CONCLUSION

Defendant's motion for summary judgment on the federal age discrimination claim is denied. Defendant's motion for summary judgment on plaintiff's state law claims is granted.

SO ORDERED.