Carl J. BUSCEMI, Plaintiff,

v.

PEPSICO, INC. and Pepsi–Cola,
U.S.A., Defendants.

No. 86 Civ. 6382 (RLC).

United States District Court,
S.D. New York.

April 16, 1990.

**1268**

Jones Hirsch Connors & Bull, New York City (James P. Connors and Steven H. Kaplan, of counsel), for plaintiff.

Kilpatrick & Cody, Atlanta, Ga. (Edmund M. Kneisel and Walter E. Johnson, of counsel), and Nitkin Alkalay Handler Robbins & Korn, New York City (John Paul Robbins, of counsel), for defendants.

**ROBERT L. CARTER**, District Judge.

Plaintiff Carl J. Buscemi brings this age discrimination action against defendant PepsiCo, Inc.[1] pursuant to the Federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 (1985) *et seq.*, and the New York Human Rights Law, N.Y. Exec. Law §§ 296 (1982 & Supp.1990) *et seq.* The background and procedural history of this case are adequately described in previous opinions and need not be recounted here. *See Buscemi v. Pepsi-Co*, 50 Emp.Prac.Dec. (CCH) ¶ 38,954 at 57,121 (S.D.N.Y. March 27, 1989) [1989 WL 31685] (Carter, J.), *later proceeding*, 726 F.Supp. 99 (S.D.N.Y.1989). This case is ready to proceed to trial and presently before the court are two motions by defendant. Defendant first moves the court *in limine* to bar any reference at trial by plaintiff to certain allegedly non-probative but highly prejudicial evidence. Defendant also moves pursuant to Rule 42(b), F.R. Civ.P., that plaintiff's state law claim be tried separately.[2]

**1.** Although named as a separate defendant by plaintiff, Pepsi–Cola, U.S.A. is an unincorporated division of PepsiCo, Inc., not a separate legal entity.

**2.** Rule 42(b), F.R.Civ.P., provides in pertinent part that:

## I.

Broadly speaking, two categories of evidence are at issue in defendant's motion *in limine*. First, defendant requests barring statements published in a June, 1987 article in *Business World* magazine entitled "Pepsico's Fast Track" and a letter in response to the article written by Joe Roger King, PepsiCo's Senior Vice–President of personnel ("King"). The "Fast Track" article focuses on the defendant's attempt to recruit and develop qualified executives who are perceived as being potential candidates for top management positions. King was interviewed by the article's author and was quoted as saying, *inter alia*, "[w]e're looking for the most aggressive youngsters...." and "[w]e don't want unpromotable fifty year-olds around. They become bitter and frustrated and are better off leaving." The letter written by King in response to the article was published in a subsequent edition of *Business Month* and states that his quote regarding "unpromotable fifty year-olds" was published out of context.

Second, defendant requests that the court ban various kinds of evidence relating to defendant's hiring and discharge practices. Included in this category is a listing of all hiring and discharge decisions made over a three year period in the department in which plaintiff worked. The list contains entries for 65 employees: 50 under the age of forty and 15 over the age of forty. Defendant admits to eliminating the positions of five of the listed employees, all of whom were over the age of 40. Also included in this category is statistical evidence relating to defendant's hiring decisions, and evidence of specific instances of its allegedly discriminatory treatment of other employees.

## A.

Defendant's argument is essentially that no item of the evidence it seeks to bar is

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim....

probative as to the motivation underlying plaintiff's termination, and that it would be misleading, confusing, and unfairly prejudicial.

As to the "Fast Track" article, defendant argues that the statements quoted do not speak to the issue of discriminatory intent. Defendant further asserts that the statements were not made by anyone who participated in the decision to end plaintiff's employment and do not concern plaintiff's level of employment (salary grade 06). Finally, defendant argues that the article addressed PepsiCo's hiring policies and as such is irrelevant to a claim of discriminatory discharge.

With regard to the statistical evidence proffered by plaintiff, defendant argues that the statistics which plaintiff offers are invalid because of the small sample size and because they do not make a meaningful comparison between the age of persons hired and the age of qualified persons in the pool of applicants. Defendant further argues that any evidence regarding defendant's hiring practices is irrelevant to a discharge case. Defendant also asserts that evidence about forced resignations is likewise irrelevant in a case about age discrimination, absent evidence of a connection between forced resignations and age.

Defendant likewise contends that individual employment histories of other employees cannot be offered into evidence to support plaintiff's claim. Defendant argues that plaintiff has no knowledge of these other employees' performance or of its business considerations, and that plaintiff's anecdotal evidence is highly prejudicial, but not probative of an alleged pattern of age bias.

Plaintiff responds that, irrespective of the admissibility of the proffered evidence in isolation, when viewed in totality, each item of evidence is relevant to the employment decision at issue and is otherwise admissible.

### B.

As a general matter, defendant is correct that evidence of recruitment and hiring policies is irrelevant in an ADEA discharge case. *See, e.g., Baez v. American Cyanamid Co.,* 685 F.Supp. 303, 308 (D.P.R.1988) (citing Larson, 3A *Employment Discrimination,* § 102.44 (1990)). Plaintiff's central proposition, however, is that, *taken together,* the evidence at issue bespeaks an overarching policy by defendant of eliminating older employees and bringing in younger ones, based upon the age of those employees. Plaintiff is said to be a victim of this policy.

As plaintiff has the burden of proving that "age was the determining factor in his discharge in the sense that, 'but for' his employer's motive to discriminate against him because of age, he would not have been discharged," *Pena v. Brattleboro Retreat,* 702 F.2d 322, 323 (2d Cir.1983) (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019 (1st Cir.1979)), his "discriminatory personnel philosophy" or "fast track" thesis is clearly relevant to this case. The issue then is whether the proffered evidence, viewed in its totality, is probative of such a policy. *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 19–20 (7th Cir. 1987) (in assessing plaintiff's showing of age discrimination, trial court should view the proffered evidence "in its totality" rather than in isolation); *Poklitar v. CBS, Inc.,* 652 F.Supp. 1023, 1027 (S.D.N.Y.1987) (Walker, J.) (same).

As regards the *Business Month* article, there are two statements attributed to King which are at issue: "We're looking for the most aggressive youngsters...." and "[w]e don't want unpromotable fifty year-olds around. They become bitter and frustrated and are better off leaving."[3] These statements certainly set the groundwork for plaintiff's theory. They express

---

**3.** As a preliminary matter, any suggestion that the published statements and letter constitute inadmissible hearsay is without merit. The statements are quotations which constitute admissions by a party-opponent and were adopted by King in his subsequent letter to *Business Month.* They are not hearsay. Rule 801(d)(2), F.R.E. *See also, Attorney General v. Irish Northern Aid Committee,* 530 F.Supp. 241, 252 (S.D.N. Y.1981) (Haight, J.), *aff'd on other grounds,* 668 F.2d 159 (2d Cir.1982).

not only a preference for younger employees in the hiring process, but also an aversion by management ("we") for older established workers which could reasonably be construed as relating to termination decisions, or at least to the phase out or "managing out" process said to have occurred in this case.

That the statements were purportedly made by King rather than by those directly responsible for plaintiff's termination and did not expressly concern positions in plaintiff's job category is noteworthy. However, these facts are not dispositive given that King was an executive of the defendant company whose position concerned personnel policy. No closer connection is necessary. *See, e.g., McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 116–117 (7th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987) (nexus between comments and action taken with respect to plaintiff may be inferred); *Robb v. Chemetron Corp.*, 17 Fair Empl. Prac.Cas. (BNA) 1535 (S.D. Texas 1978) (same). These statements are admissible.

▪ The proffered statistical evidence regarding defendant's hiring practices is not relevant to the decision to terminate plaintiff whether taken in isolation or in the context of the other offered proof. Newly hired employees are always likely to be younger than established employees or those leaving the company, irrespective of age-related discrimination. *See, e.g., Kier v. Commercial Union Ins. Co.*, 808 F.2d 1254, 1258 (7th Cir.), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987) (replacement of older workers with younger ones "represents the normal course of employment histories, and is nothing to marvel at"); *Laugesen v. Anaconda Co.*, 510 F.2d 307, 313 n. 4 (6th Cir.1975) ("absent any discriminatory intent, discharged employees will more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones

move in."); *Steinberg v. St. Regis/Sheraton Hotel*, 583 F.Supp. 421, 423 (S.D.N.Y. 1984) (Goettel, J.) (contrasting hiring ages with termination ages is "virtually useless in any realistic analysis of a claim of disparate treatment because of age") (quoting *Pirone v. Home Ins. Co.*, 559 F.Supp. 306, 312 (S.D.N.Y.) (Carter, J.), *aff'd mem.*, 742 F.2d 1430 (1983)).

Significantly, if plaintiff offered statistical proof which compared the ages of those hired before and after the alleged adoption of the "fast track" policy, such evidence might be relevant to the case at hand. Such a comparison, if it tended to show an increase in the hiring of "youngsters," would be probative of plaintiff's thesis, at least when combined with plaintiff's termination data. Plaintiff's proffered hiring evidence does not approach this level of sophistication and must be excluded as irrelevant. *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 620, 94 S.Ct. 1323, 1333, 39 L.Ed.2d 630 (1974); *Steinberg v. St. Regis, supra*, 583 F.Supp. at 423.

▪ Plaintiff's proffered discharge data is another matter. Plaintiff seeks to present statistical evidence that although the ratio of employees not protected by the ADEA to protected employees in the relevant workforce was 50:15, 100% of those "managed out" over a three-year period were over age 40 and 80% were over age 50.[4] This type of comparison is clearly relevant to the issue of discriminatory discharge. *See, e.g., Pirone v. Home Ins. Co., supra*, 559 F.Supp. at 312. While there are undoubtedly legitimate as well as discriminatory factors which might explain this disparity, there is no doubt that this evidence, if believed, would support an inference of discrimination when juxtaposed with plaintiff's other offerings.[5]

Defendant also challenges the relevance of plaintiff's statistical showing based on the size of the pertinent sample. Although this is clearly a concern whenever a pattern

---

4. Stated another way, 100% of the unprotected employees were retained during the relevant period while only 67% of the protected employees were retained.

5. Defendant challenges the accuracy of plaintiff's statistics and may present contrary figures or other evidence at trial. This challenge does not affect the issue of relevance.

of discriminatory behavior is alleged, *Mayor of Philadelphia v. Educational Equality League, supra,* 415 U.S. at 621, 94 S.Ct. at 1333–34; *Haskell v. Kaman Corp.,* 743 F.2d 113, 121 (2d Cir.1984), the employee pool and brief time frame at issue here are of probative value and are admissible. *See, e.g., Poklitar v. CBS, Inc.,* 652 F.Supp. 1023, 1028 (S.D.N.Y.1987)-(Walker, J.) (four of eight employees fired were over age forty while all five employees hired were under forty).

■ Finally, defendant asserts that evidence regarding the employment histories of several former employees allegedly "managed out" of PepsiCo for discriminatory reasons is not relevant to the employment decision which affected plaintiff. Although such witnesses clearly may not "give subjective evaluations of their own and of their fellow [employees'] performance without furnishing the bases for their evaluations," *Haskell v. Kaman Corp., supra,* 743 F.2d at 121, testimony or other evidence regarding discriminatory treatment of other employees would be probative of a discriminatory termination policy such as the one alleged here. *Stumph v. Thomas & Skinner, Inc.,* 770 F.2d 93, 97 (7th Cir.1985); *Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 162 (5th Cir.1971) (Title VII context).

In sum, the court finds that statistical evidence regarding plaintiff's hiring practices is irrelevant and must be excluded. The probative value of plaintiff's proffered evidence of King's statements and subsequent letter in *Business Month,* statistical evidence of terminations, and evidence relating directly to discriminatory action against other employees allegedly "managed out" of PepsiCo outweighs any potential prejudice to defendant and is admissible.

## II.

■ In support of its "motion for severance"[6] of plaintiff's state law claim from his ADEA claim, defendant argues that trying all claims together will confuse the jury and will result in the jury being prejudicially influenced by evidence of plaintiff's emotional distress.[7] Plaintiff responds that the risk of confusion or prejudice is minimal and does not warrant separate trials, particularly when compared with the inconvenience, delay and expense of separate proceedings.

Although the court has broad discretion to order issues in a single case tried separately, *Gonzalez–Marin v. Equitable Life Assur. Soc.,* 845 F.2d 1140, 1145 (1st Cir. 1988), for reasons of efficient judicial administration courts favor having only one trial whenever possible. Therefore, the party moving for a separate trial has the burden of showing that this is necessary to prevent prejudice or confusion, and to serve the ends of justice. *See,* generally,

---

**6.** Defendant's "Brief in Support of Defendant's Motion for Severance" uses the words "severance," "separate trial," and "bifurcation" interchangeably. Although defendant styles its motion as one for "severance," it appears to confuse the concepts of severance and separate trials. *Spencer, White & Prentis Inc. of Conn. v. Pfizer, Inc.,* 498 F.2d 358, 361–62 (2d Cir.1974). *See,* generally, C. Wright & A. Miller, *Federal Practice and Procedure* § 2387 (1971). Because defendant cites Rule 42(b), F.R.Civ.P., the rule governing separate trials of various issues in a single case, rather than Rule 21, F.R.Civ.P., the rule governing severance, the court construes the motion as one requesting separate trials of various issues in the case. Insofar as defendant's motion is made pursuant to Rule 21, it is denied.

**7.** Defendant also suggests that plaintiff has no right under the Seventh Amendment to trial by jury of his state law claim, and that this is an additional factor favoring separate trials. Contrary to defendant's suggestion, plaintiff's claim for damages resulting from emotional distress is an action at law, and therefore is triable to a jury. *See,* generally, *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* — U.S. —, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). Other federal courts have evidently reached the same conclusion as they have routinely tried state emotional distress claims arising from age discrimination before a jury. *See, e.g., Guthrie v. J.C. Penney Co.,* 803 F.2d 202, 208 (5th Cir.1986); *Cancellier v. Federated Dept. Stores,* 672 F.2d 1312, 1317–18 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). In any event, assuming *arguendo* that plaintiff is not entitled to a jury trial on his state law claim, it is hard to understand how this supports defendant's position that plaintiff's state law claim should be tried before a different jury than his ADEA claim.

C. Wright & A. Miller, *Federal Practice and Procedure* § 2388 (1971).

The Second Circuit has not had occasion to comment on the acceptability of trying an ADEA claim together with state law claims. Other judges on this court, considering this question in the context of determining whether or not to exercise pendant jurisdiction, have reached differing results.[8] *See, e.g., Arnell v. Pan American World Airways, Inc.,* 611 F.Supp. 908, 910 (S.D.N.Y.1985) (Knapp, J.) (ADEA and state law claim should not be joined in one action); *Perry v. Manocherian,* 675 F.Supp. 1417, 1428–29 (S.D.N.Y.1987) (Sweet, J.) (ADEA and state law claim joined in one action).

Although it is clear that evidence of plaintiff's emotional distress is irrelevant to his ADEA cause of action, evidence of harm to a plaintiff, regardless of the cause, may result in sympathetic jurors more concerned with compensating plaintiff for his injury than whether or not defendant is at fault. While the possibility of jury confusion is not in itself sufficient under the facts of this case to warrant a separate proceeding, *see Buscemi v. PepsiCo, supra,* 726 F.Supp. at 102, when the possibility of confusion, however negligible, is combined with the potential for evidence of plaintiff's emotional distress to prejudice the jury, a more substantial claim is made out.

Weighing all the factors in this case, the court finds separate proceedings on the liability issue and the damages issue to be appropriate. This will result in little sacrifice to efficiency, convenience or judicial economy, and will serve the interests of justice. The same jury will be used to try both the liability phase and damages, and therefore there will be no need to have repetitive testimony. Furthermore, the only witness who will have to be called twice is the plaintiff.[9] At the same time, separating liability from damages will be a sufficient measure in this case to deal with any possible prejudice or confusion. Accordingly, the issue of defendant's liability will be tried first. If the jury finds liability on the part of defendant, the parties will then present their case to the jury on the issue of plaintiff's damages.

III.

In conclusion, defendant's motion *in limine* is granted in part and denied in part. Defendant's motion for separate proceedings as to liability and as to damages is granted. The parties are reminded to maintain contact with the court's deputy clerk regarding the trial date.

IT IS SO ORDERED.

---

8. Other district courts have also considered, and disagreed on, the propriety of trying ADEA and state-law emotional distress claims together. *See, e.g., La–Blanc v. City of Stamford,* Civ. No. B–88–63 (TFGD), slip. op. (D.Conn. May 10, 1988) [1988 WL 148431] (issues tried together); *Studint v. LaSalle Ice Cream Co., Inc.,* 623 F.Supp. 232, 234–35 (E.D.N.Y.1985) (same); *Koehler v. Chesebrough–Ponds, Inc.,* 705 F.Supp. 721 (D.Conn.1988) (issues tried separately); *Borumka v. Rocky Mountain Hosp.,* 599 F.Supp. 857 (D.Colo.1984) (same).

9. According to the Pre-Trial Order, the only witnesses to be called on the issue of emotional distress is plaintiff and perhaps his wife.