**Patricia A. BARTZ, Plaintiff,**

v.

**AGWAY, INC., Defendant.**

**No. 91–CV–1050.**

United States District Court, N.D. New York.

Feb. 15, 1994.

---

Office of Eric M. Alderman (Eric Alderman, of counsel), Syracuse, NY, for plaintiff.

Hiscock & Barclay (Eric Charlton, of counsel), Syracuse, NY, for defendant.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

Plaintiff filed this action pursuant to federal and state sex and age discrimination statutes: Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. § 621 *et seq.*, and the New York State Human Rights Law, Executive Law § 296 *et seq.* The plaintiff alleges that she was discharged from her position as a buyer with Agway, Inc. on the basis of her sex and age. The court invoked pendent jurisdiction on the corresponding state statute.

The matter of *Bartz v. Agway,* 91–CV–1050, was tried before the bench and the jury, and the jury found that there was no age or sex discrimination under the ADEA and corresponding state statute. All that remains is plaintiff's Title VII claim which requires a non-jury trial under the laws. This Memorandum—Decision and Order constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure with respect to the plaintiff's Title VII claim.

## I. FINDINGS OF FACT

In the late fall of 1989, Patricia A. Bartz (hereinafter "plaintiff") was a 50 year old female employed as an associate buyer in the Farm–Home Division of Agway, Inc. located in DeWitt, New York. At that time, the said division was divided into two groups—a marketing group and a buying group—which resulted in each product line being handled by two different groups.

In December of 1989, Terry Schoenberger, the Director of Agway's Farm–Home Division, had convinced his superiors to reorganize the Farm–Home Division so that individual employees in the division would be

responsible for certain product lines. To accomplish the reorganization, it was decided that the number of employees in the division would be reduced form twenty (20) to sixteen (16). In order to fill the sixteen positions, consultation took place among Schoenberger, Luettinger–Goyette, Personnel Manager, and Wittemore, Vice President. Certain criteria were established to decide which employees would be retained and in what position. These criteria emphasized marketing and managerial skills and product familiarity. Agway's management testified during trial that when they applied the stated criteria to fill the positions in question, absolutely no consideration was given to either sex or age. Furthermore, the management testified that past job performance was not taken into consideration since all employees in the division had consistently received satisfactory performance ratings in the past.

The available positions in the reorganized division were first filled by employees with management experience. Next, senior buyers from the old divisions filled the positions. Special treatment was accorded to employees McCordick and Zimmer because they were part of a specialty sector of the company's business dealing with the procurement and marketing of lumber.

The functions previously performed by plaintiff such as buying hardware and roofing materials and the like were assumed in part by two male employees, Taylor and Zimmer. Both of these employees were alleged by Agway to have the skills necessary to perform the said functions in the reorganized division.

Prior to the reorganization, there were two female employees—plaintiff and Susan Ransom. After the reorganization, plaintiff lost her job and Ransom remained in a new position. It is plaintiff's contention that Agway failed to follow a policy of affirmative action in not maintaining a balance of employees with regards to the ratio of female to male employees. Plaintiff further contends that Schoenberger discriminated against her by deliberately placing male employees who had worked for him previous to the reorganization into the available positions first, and concomitantly, excluding the plaintiff from these positions even though she was as qualified as the male employees. Plaintiff further argues that by reducing the number of female employees in the work force by fifty percent, Agway was deliberately indifferent to plaintiff's right to be free from sexually disparate treatment.

Prior to plaintiff's termination from her position as buyer in the Farm–Home Division in January of 1990, she was told about certain employment policies and options that she should consider. In that connection, Agway's employees discussed the policy then in place to help any employee who were displaced from their jobs through no fault of their own. This policy afforded assistance to displaced employees by making office space equipped with telephones available for those looking for employment outside of Agway. Furthermore, any desired help on creating or updating resumes were offered by Agway. More importantly to plaintiff, because of her desire to remain in Agway's employ, was the policy which mandated that a displaced employee be interviewed for any open position for which he or she was qualified for before any others were given a chance to interview for the same position. Plaintiff contends that Agway violated this policy when jobs became open in other divisions and other non-displaced persons were interviewed first for those positions before plaintiff was considered and rejected. Specifically, David McDougal, who interviewed plaintiff for the food specialist positions admitted that he interviewed, among others, one of his current male employees, Tim Shatraw, prior to interviewing plaintiff. Shatraw was ultimately given the job. The facts do indicate that because of Shatraw's background and experience, it would appear that he was better qualified for the position of food specialist than plaintiff who was lacking in management and sales experience which was necessary for the position.

Plaintiff was also interviewed for a seed buyer position by Kathleen Gillespie, a seed supply manager in the Feed & Crops Division of Agway. Plaintiff testified during trial that she was qualified for that position because of her experience as a buyer and also because of her proven ability to learn new

product lines even though she had never worked with seeds before. Agway's proof during trial showed that the seed buyer position necessitated certain technical background and experience in horticulture. The position was ultimately filled by a male individual who indeed had a background in horticulture. This individual also had experience in supervising certain seed growing farms maintained by Agway. The evidence further showed that the position required skills necessary to manage three subsidiary corporations, skills which the male individual possessed and plaintiff did not.

The plaintiff was rehired by Agway in other capacities. More specifically, the proof showed that while plaintiff was seeking other positions within Agway, she was hired in a temporary capacity as an export specialist at about three quarters of her previous salary as a buyer. This position terminated at the end of June, 1990. Plaintiff was also offered a position as an administrative assistant—a position which was secretarial in nature—at about one half of her salary as a buyer. Plaintiff understandably rejected this offer stating that she would have difficulty performing secretarial duties for her former peers.

The plaintiff filed a complaint with the Equal Employment Opportunity Commission on October 22, 1990. On September 18, 1991, the plaintiff commenced the instant action in federal court alleging sex and age discrimination.

## II. DISCRIMINATORY DISCHARGE

### A. APPLICABLE STANDARDS

■ Actions brought pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.*[1] involve a burden shifting analysis. *Russo v. Trifari, Krussman & Fishel,* 837 F.2d 40, 43 (2d Cir.1988). First, plaintiff must prove a *prima facie* case of discrimination by a preponderance of the evidence. Second, once plaintiff has present-

ed such a *prima facie* case, the burden shifts to the defendant to "articulate" some nondiscriminatory reason for the alleged discriminatory action. Finally, if the defendant is able to meet its burden of articulating some nondiscriminatory reason, plaintiff must then be given the opportunity to prove by a preponderance of the evidence that the proffered reasons given are merely a pretext for discrimination. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–254, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Lowe v. Commack Union Free School District,* 886 F.2d 1364, 1369 (2d Cir.1989). Recently, the Supreme Court has interpreted "pretext for discrimination" to mean not merely a showing of falsity, but a showing of true discriminatory intent by the employer. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (June 25, 1993).

Each of the steps in the burden shifting analysis must be examined in order to determine whether the plaintiff has put forth a viable cause of action pursuant to Title VII. We must be mindful that regardless of how these burdens are described, the plaintiff retains the ultimate burden of persuading the fact finder. *See Lopez v. Metropolitan Life Ins. Co.,* 930 F.2d 157, 161 (2d Cir.1990).

### B. PLAINTIFF'S PRIMA FACIE CASE

■ In order for the plaintiff to meet her initial burden of proof, she must demonstrate that (1) she was within a protected group; (2) she was qualified for the job but was rejected despite her qualifications; and (3) after her rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985); *see Hollander v.*

---

1. Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in relevant part:
 It shall be an unlawful employment practice for an employer—
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin; ...
42 U.S.C. § 2000e–2(a)(1) (emphasis added).

*American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990). Of course recognizing that various scenarios may give rise to a Title VII suit, the Supreme Court wisely acknowledged that the requisite elements of the *prima facie* case may also vary. *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6. Thus, in a case such as our's, where plaintiff's discharge occurred as part of an employer's reorganization efforts, courts have applied a different *prima facie* burden. In such a case, the plaintiff must demonstrate that (1) she was within a protected group, (2) she was qualified to assume another position within the employer's newly organized division but was discharged, and (3) some evidence exists from which a factfinder might reasonably conclude that the employer intended to discriminate against females. *See Montana v. First Federal Sav. & Loan of Rochester*, 869 F.2d 100, 105 (2d Cir.1989); *Poklitar v. CBS, Inc.*, 652 F.Supp. 1023, 1026 (S.D.N.Y.1987) (ADEA case); *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir.1981).

The requirement that plaintiff establish her *prima facie* case serves an important function in Title VII litigation: "it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. (cites omitted) As the Court explained in *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), the *prima facie* case 'raises an inference of discrimination only because we presume these acts if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1094.

■ In the case at bar, the first element of plaintiff's *prima facie* case is not in dispute; plaintiff is a female and therefore, clearly is a member of a protected class. Furthermore, the issue of plaintiff's qualification for the position of Product Manager/Buyer Hardware in the reorganized division of Agway is also not in dispute. The facts do indicate that plaintiff was in fact at least minimally qualified to perform the duties of Product Manager/Buyer Hardware and but for the fact that there were other employees who

had more managerial experience, plaintiff would have been offered the position of Product Manager/Buyer Hardware. The real issue then becomes whether plaintiff was *as* qualified as those chosen to fill the Product Manager/Buyer Hardware position. This issue will be discussed more in depth when plaintiff attempts to show pretext later in the court's opinion, *infra*. At this juncture, it is suffice to say plaintiff was at least minimally qualified to assume another position in the reorganized division of Agway, and therefore, the plaintiff has satisfied the second element of her *prima facie* case.

"[P]roof of competence sufficient to make out a *prima facie* case of discrimination was never intended to encompass proof of superiority or flawless performance. If an employer is dissatisfied with the performance of an employee, he can properly raise the issue in rebuttal of the plaintiff's showing." *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978). Within the context of this case, plaintiff has sufficiently demonstrated that she possessed the basic skills necessary for a new position within the reorganized division of Agway, and has thereby made out a *prima facie* showing of competence.

■ As for plaintiff's last element, plaintiff is required to produce direct or circumstantial evidence that would lead a "reasonable fact-finder to conclude either . . . that defendant consciously refused to consider retaining or relocating [the plaintiff] because of [her sex], or . . . [that] defendant regarded [sex] as a negative factor in such consideration." *E.E.O.C. v. Trans World Airlines, Inc.*, 544 F.Supp. 1187, 1218 (S.D.N.Y.1982) (quoting *Franci v. Avco Corp.*, 538 F.Supp. 250, 256 (D.Conn.1982)). An inference of discrimination can be made if plaintiff's position, or substantial portion thereof, in the reorganized division was held open or filled by an individual outside the protected class, in this case, a man. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Montana*, 869 F.2d at 104; *Donaldson v. Merrill Lynch & Co., Inc.*, 794 F.Supp. 498, 504 (S.D.N.Y. 1992).

In the case at bar, the facts clearly indicate that a substantial portion of plaintiff's duties were assumed by two male employees,

Taylor and Zimmer. This being the case, an inference of discrimination based on gender can be made, and accordingly, plaintiff has successfully established the third element of her *prima facie* case.

■ It must be reminded that "[t]he elements of proof in employment discrimination cases were not intended to be 'rigid, mechanized or ritualistic.'" *Meiri*, 759 F.2d at 996 (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)). Rather, they were intended to promote the general principle that plaintiffs in Title VII suits must merely raise an inference of discrimination. *Meiri*, 759 F.2d at 996; *see International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Thus, plaintiff's burden of proof at the *prima facie* stage of a Title VII case is *de minimis*. *See Meiri*, 759 F.2d at 996.

The plaintiff has offered sufficient evidence to demonstrate her *prima facie* case, and therefore, we now address the issue of whether the defendant has satisfied its burden of rebuttal.

## C. AGWAY'S REBUTTAL

■ Establishment of the *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. In order to rebut this presumption, the employer has the burden of producing evidence that the employee was discharged for a legitimate, nondiscriminatory reason. *Id.* The defendant, however, "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* (citing *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978)). The *Burdine* Court stated,

"[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted...."

*Burdine*, 450 U.S. at 254-55, 101 S.Ct. at 1094-95. The strength of the defendant's rebuttal, to a large extent, depends on the strength or weakness of plaintiff's *prima facie* case. *See Lieberman v. Gant*, 630 F.2d 60, 66-67 (2d Cir.1980) (noting relationship between the burden borne by the employee and the employer).

■ In the case at bar, the defendant's main proffered reason for plaintiff's discharge is that the plaintiff did not have the managerial experience Agway preferred for the new positions in the reorganized division. Agway explained that when they decided to reduce the number of employees from twenty to sixteen through the reorganization, certain criteria were established to decide which employees would be retained and in what position. These criteria emphasized marketing and managerial skills and product familiarity. The evidence during trial clearly demonstrated that there were others in Agway's employ who better fit these criteria, and this was the reason why plaintiff was discharged.

As stated earlier, the defendant need not persuade the court that it was actually motivated by the proffered reason, it need only produce evidence that the employee was discharged for a legitimate, nondiscriminatory reason. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. This Court finds that Agway's proffered reason for plaintiff's discharge was a legitimate, non-discriminatory reason, and thus, Agway has successfully rebutted plaintiff's presumption of discrimination.

The burden now falls back on the plaintiff to show that the proffered reason was mere pretext and that unlawful discrimination was the real reason for plaintiff's discharge.

## D. PRETEXT AND UNLAWFUL DISCRIMINATION.

■ "After the employer articulates legitimate, non-discriminatory reasons for the employee's discharge, the employee must be afforded an opportunity to prove the existence of factual issues demonstrating that the stated reasons were merely a pretext for

discrimination." *Meiri*, 759 F.2d at 997 (citing *Burdine*, 450 U.S. at 256–57, 101 S.Ct. at 1095). The employee may satisfy this burden by showing that the employer was motivated by a discriminatory reason or that the proffered reason given by the employer was false. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Recently, the Supreme Court in *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (June 25, 1993), heightened the plaintiff's burden in Title VII cases. It is now incumbent on the plaintiff to prove, not only falsity of the proffered reasons given by the employer, but also that discriminatory motive was the true reason for the discharge. *Id.* at ——, 113 S.Ct. at 2752. The plaintiff in this action has failed to show the initial burden of falsity.

From the evidence at trial, there simply was not a scintilla of evidence showing that plaintiff's discharge was due to reasons other than the fact that plaintiff simply lacked the managerial skills Agway was looking for. Furthermore, plaintiff has neither demonstrated that Agway's preference for greater managerial experience was mere pretext for what was in truth a discriminatory reason, nor did she demonstrate that she in fact was better qualified than those actually chosen for the positions available in the reorganized division. Thus, plaintiff has failed to demonstrate a viable Title VII claim of discriminatory discharge.

Even assuming, *arguendo*, that plaintiff was able to show pretext, plaintiff will still fail in her Title VII claim because she is not able to show discriminatory intent on the part of the defendant. As stated earlier, it is now incumbent on the plaintiff to prove, not only falsity of the proffered reasons given by the employer, but also that discriminatory motive was the true reason for the discharge. *Hicks*, —— U.S. at ——, 113 S.Ct. at 2752. The plaintiff has failed to make such a showing.

The instant case is void of any facts indicating that Agway had any discriminatory intent when they decided to discharge plaintiff from her position as a buyer. The record is ample with evidence showing that Agway's

management thought it prudent to consolidate the two divisions so that certain products lines would be the responsibility of one group of employees instead of two. There is no evidence to show that this consolidation took place for a discriminatory purpose. Furthermore, there is no indication that the method of selecting the employees to be retained by Agway after the reorganization was fueled by discriminatory intent. The facts clearly demonstrate that because one group of employees would now be responsible for certain product lines instead of two, it was incumbent for the said employees to posses not only purchasing skills but also managerial skills. Agway's criteria for selecting employees to be retained by the corporation was specific; Agway placed primary emphasis on those with prior management experience; next, senior buyers from the old divisions were given preference; and lastly, the remaining positions were filled by buyers in accordance to their product lines with certain preferences given to buyers who dealt in a special sector of the market such as lumber. There is no evidence tending to show that employees' gender was ever a taken into consideration as a factor in the management's decision to retain or discharge an employee after the reorganization. Accordingly, this court finds no evidence of discriminatory intent by Agway.

Plaintiff asserts two arguments in support of her claim that Agway had discriminatory intent. She contends that Agway's reorganization failed to follow affirmative action policies in that the reorganization failed to maintain a balance of employees' female to male ratio. Additionally, plaintiff contends that certain less qualified male workers were retained for available positions in the reorganized division even though plaintiff was better qualified for such positions. These arguments are footless.

It may be true that Agway's management failed to take gender into consideration when it was deciding on which employee to retain after the reorganization. It may also be true that such failure resulted in the number of female employees being cut 50 percent.[2] If

2. Prior to the reorganization, there were two

female employees. After the reorganization,

the court's ultimate determination of plaintiff's claim hinged on these factors, it cannot be gainsaid that she would prevail. Unfortunately, however, disparate impact on the number of female employees alone is not evidence of discriminatory intent. More is needed. The plaintiff has utterly failed to submit any evidence to support a finding that the defendant had any gender based discriminatory intent when it had decided to discharge plaintiff from its employ. Simply put, there was no proof offered to show that plaintiff's discharge had anything to do with the fact that plaintiff is a woman.

Plaintiff's contention that less qualified male employees were retained even though plaintiff was better qualified is also without merit. The plaintiff while making such a contention, concomitantly failed to submit any evidence to support the contention. As a matter of fact, the evidence during trial clearly supports Agway's assertion that employees were retained based on certain legitimate, nondiscriminatory criteria and not based on gender.

The plaintiff, consequently, has failed to demonstrate a viable claim under Title VII for discriminatory discharge and therefore, such claim must be dismissed.

## III. FAILURE TO REHIRE

Plaintiff has also brought a failure to rehire claim pursuant to Title VII. Under this claim, plaintiff contends that certain positions available after the reorganization were not offered to her for discriminatory reasons. There are two such positions at issue: the food specialist position and the seed buyer position.

 As stated earlier, in order for the plaintiff to meet her initial burden of proof in failure to hire cases, she must demonstrate that (1) she was within a protected group; (2) she was qualified for the job but was rejected despite her qualifications; and (3) after her rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonnell Douglas*, 411 U.S. at

plaintiff was discharged but her co-female em-

802, 93 S.Ct. at 1824; *Meiri*, 759 F.2d at 995; see *Hollander*, 895 F.2d at 83.

 Under this framework, in order for the plaintiff to shift the burden of production to the defendant so that the defendant may articulate some legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must first establish her *prima facie* case.

It is the court's finding that plaintiff has successfully demonstrated her *prima facie* case: plaintiff is female, plaintiff was qualified for the positions available, at least minimally, and lastly, after plaintiff was rejected, the positions remained open and Agway continued to seek applicants from persons of plaintiff's qualifications.

The court also finds that Agway has sufficiently rebutted plaintiff's inference of unlawful discrimination. Agway has submitted evidence demonstrating that the positions at issue required certain qualifications which plaintiff lacked. Specifically, the food specialist position required a certain level of management and sales experience, and the seed buyer position required certain technical background and experience in horticulture. Agway found other candidates better qualified for these positions, and accordingly, plaintiff was not given an offer. Such proffered reason is a legitimate, non-discriminatory reason, and thus, Agway has rebutted plaintiff's inference of unlawful discrimination.

Plaintiff has failed to submit any evidence demonstrating pretext of Agway's proffered reason for her discharge. The evidence clearly shows that the employees ultimately hired for the positions in question better fit the criteria Agway was looking for. For example, Tim Shatraw, the male employee given the food specialist position, had a proven tract record and the required operational experience Agway was seeking. He was also the Territory Manager in the Country Foods Division since 1987, and therefore had product familiarity which Agway was looking for. As for the seed buyer position, most of the responsibilities of the position was assumed by Dean Cotton who was well qualified for

ployee remained with Agway in a new position.

such a position. Mr. Cotton was a horticulturist and received a Bachelors Degree in agriculture and horticulture from Penn State. He was exactly what Agway was looking for to fill the position. Simply put, there is nothing in the records demonstrating that Agway's proffered reason for failure to rehire plaintiff was a mere pretext for what was in truth a discriminatory reason. The fact that the two employees Agway eventually hired were both male does not affect the outcome of this case because there was a legitimate, non-discriminatory reason for their hire.

Plaintiff contends that Agway's failure to comply with its Displaced Employee Policy is an indication of discriminatory intent. The court disagrees. As stated earlier, it is now incumbent on the plaintiff to prove, not only falsity of the proffered reason given by the employer, but also that discriminatory motive was the true reason for the discharge. *Hicks*, —— U.S. at ——, 113 S.Ct. at 2752. Agway's alleged failure to comply with its own policies alone is not indicative of discriminatory intent, and therefore, plaintiff's Title VII claim based on failure to rehire must also fail.